RICHARD H. NICOLAIDES, JR. (*pro hac vice*)
AMY P. KLIE (*pro hac vice*)
SAMUEL Y. CHEN (*pro hac vice*)
NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP
10 S WACKER DR STE 2100
CHICAGO, IL 60606
(312) 585-1400
rnicolaides@nicolaidesllp.com
aklie@nicolaidesllp.com
schen@nicolaidesllp.com

REBECCA L. HILL (06246)
PHILLIP S. FERGUSON (01063)
CHRISTENSEN & JENSEN PC
257 E 200 S STE 1100
SALT LAKE CITY, UT 84111
(801) 323-5000
rebecca.hill@chrisjen.com
phillip.ferguson@chrisjen.com

*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

## THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; and ACE PROPERTY AND CASUALTY INSURANCE CO.,<br><br>Defendants. | **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDA OF LAW IN SUPPORT OF SUMMARY JUDGMENT**<br><br><br>Case No. 2:21-cv-00582-DAO<br><br>District Court Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero<br><br>**REDACTED VERSION** |

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") moves this Court for an order, granting summary judgment, that no genuine issue of fact exists and, as a matter of law, National Union has no duty to defend or indemnify the plaintiff, The Church of Jesus Christ of Latter-day Saints (the "Church") in connection with the lawsuit, *Jane Doe et al. v. The Corporation of the President of the Church of Latter-day Saints, et al*., Civil Action of No. 13-C-656, in the Circuit Court of Berkeley County, West Virginia, because the Church has not established exhaustion of the National Union Umbrella Policy's Retained Limit, which is a condition precedent to coverage.  In the alternative, National Union moves this Court to enter summary judgment in its favor on the grounds that the Church is estopped from seeking defense and indemnity for the lawsuit, and that its settlement of the lawsuit breached the National Union Umbrella Policy's voluntary payments provision, which is an additional bar to indemnity.

## TABLE OF CONTENTS

I.     INTRODUCTION AND RELIEF SOUGHT ............................................................ 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 3

    A.  The National Union Umbrella Policy .................................................................... 3

    B.  The West Virginia Abuse Lawsuit........................................................................ 8

III.   LEGAL STANDARD AND BURDEN ...................................................................... 16

IV.    ARGUMENT ............................................................................................................. 16

    A.  Exhaustion of the National Union Umbrella Policy's Retained Limit is a
    Condition Precedent to Coverage. ....................................................................... 16

          1.  ▇▇▇▇ Abuse Claim Involved a Single Occurrence, Subject to a
              ▇▇▇▇▇▇ Retained Limit, Which ▇▇▇ Settlement Did Not
          Exhaust........................................................................................................ 18

          2.  National Union's Duty to Defend Does Not Arise Because the
              National Union Umbrella Policy's Retained Limit is Not
              Exhausted. .................................................................................................. 20

          3.  The Retained Limit Applicable to ▇▇▇ Claim Cannot Be
              Satisfied by Aggregating Amounts Paid for Other, Unrelated
              Liabilities Caused by Different Occurrences.  .................................. 21

    B.  The Church's Failure to Assert Exhaustion of the Retained Limit During the
    W.Va. Abuse Litigation is Grounds for Estoppel. ............................................... 26

    C.  The Church Breached the National Union Umbrella Policy's Consent to
    Settle Condition, and Indemnity is Barred on this Additional Basis. ................... 28

V.     CONCLUSION .......................................................................................................... 29

i

**TABLE OF AUTHORITIES**

**Cases**

*Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405 (Ind. Ct. App. 2008) .................................. 16

*American National Property & Casualty Co. v. Sorensen*, 2013 UT App 295 .......................... 23

*Berry Plastics Corp. v. Illinois Nat'l Ins. Co.*, 244 F. Supp. 3d 839 (2017) ................................20

*Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689 (Utah 1979).................... 26

*Celotex Corp v. Catrett*, 477 U.S. 317 (1986) ........................................................... 16

*Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*,

714 F. Supp. 2d 1119 (D. Kan.).................................................................... 16

*Globe Indem. Co. v. Jordan,* 634 A.2d 1279 (Me. 1993) ........................................... 25

*Hartford Acc. & Indem. v. U.S. Fid. & Guar. Co.*, 765 F. Supp. 677  (D. Utah 1991) .............. 16

*H.E. Butt Grocery Store v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,

150 F.3d 526 (5th Cir. 1998) .................................................................. 18

*Landmark Am Ins. Co, v. M.J. Edwards & Sons Funeral Home*,

2018 WL 6588565 (W.D. Tenn. Jan. 24, 2018) ...................................................... 20

*McArthur v. State Farm Ins. Co.*, 274 P.3d 981 (Utah 2012)..................................... 16

*S.F. v. West American Ins. Co.*, 250 Va. 461 (1995) ............................................. 18

*Society of Roman Catholic Church of Lafayette v. Interstate Fire & Cas. Co.*,

26 F.3d 1359 (5th Cir. 1994)  ................................................................. 18

*State Farm Fire and Cas. Co. v. Elizabeth N.*, 12 Cal. Rptr. 2d 327 (Cal. Ct. App. 1992)........ 18

*Trinity Universal Ins. Co. v. Metzger*, 360 So. 2d 960 (Ala. 1978).......................... 25

*Utah Transit Authority v. Liberty Mutual Ins. Co.*,

2006 WL 2992715 (D. Utah Oct. 18, 2006) ....................................................... 28

*Washoe Cty. v. Transcon. Ins. Co.*, 878 P.2d 306 (Nev. 1994) ................................................. 19

*Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28 ................................................................... 26

**Other Sources**

Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issus,*

24 Torts & Ins. L.J. 715 (1989) ............................................................................................. 25

https://www.irmi.com/term/insurance-definitions/combined-single-limits

(last visited May 5, 2023). ..................................................................................................... 24

Restatement of the Law of Liability Insurance § 38 (2019) ....................................................... 18

## I.    INTRODUCTION AND RELIEF SOUGHT

This is an insurance coverage dispute regarding the Church's right to defense and indemnity of a settled lawsuit, involving the alleged sexual molestation of ▆▆children between ▆▆▆▆▆▆▆▆▆▆▆▆▆ During the period of alleged abuse at issue, the Church was insured under six consecutive excess policies, the first was issued by National Union, effective June 15, 2006 to June 15, 2007, the remaining five policies were issued by Ace Property and Casualty Insurance ("Ace") for policy periods spanning from June 15, 2007 to April 1, 2012.

For the National Union Umbrella Policy to provide coverage, the underlying lawsuit must involve liability for Bodily Injury taking place during National Union's policy period, and the damages for that injury must exceed the National Union Umbrella Policy's Retained Limit.  For General Liability, the applicable Retained Limit is ▆▆▆▆▆▆for each Occurrence.  The Church bears the burden of establishing the Retained Limit's exhaustion as a condition precedent to coverage.

It is undisputed that ▆▆▆▆▆▆▆▆▆▆ in the underlying lawsuit alleged abuse only after the National Union Umbrella Policy expired.  Their claims, accordingly, do not involve Bodily Injury to which the National Union Umbrella Policy potentially applies.  One child, ▆▆▆▆ alleged abuse during National Union's policy period.  The abuse of ▆▆▆ constitutes a single Occurrence during the National Union policy period, and a single Retained Limit of ▆▆▆▆▆▆ therefore, applies to ▆▆▆ claim.  The Church settled with ▆▆ for ▆▆▆▆▆▆▆ Because ▆▆▆▆ settlement does not exceed the Retained Limit, the National Union Umbrella Policy is not triggered, and therefore, there is nothing for National Union to indemnify.  Moreover, the duty to defend, which also applies only upon exhaustion of the Retained Limit, does not arise.

In this action, the Church asserts that the ▮▮▮▮▮ Retained Limit applicable to ▮▮▮▮ claim may be exhausted, not only by damages paid in settlement of ▮▮▮ claim, but by aggregating payments the Church made for as many as ▮▮▮ other, unrelated claims, involving incidents that allegedly also took place during the National Union policy period, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ This is not how the National Union Umbrella Policy works, and is contrary to law.

Indeed, the Church's position, which it failed to assert during the underlying litigation, is patently inconsistent with the National Union Umbrella Policy's plain language and cannot be reconciled with the Policy's treatment of other types of liability, such as Auto Liability or Professional Liability, each of which is subject to a separate Retained Limit, independent from the General Liability Retained Limit. If, however, the Church is correct, and the Retained Limit applicable to ▮▮▮ claim was exhausted by the Church's payments of other claims before the underlying lawsuit was even tendered, as it now claims, the Church should be estopped from pursuing its claims in this action because its failure to report the Retained Limit's exhaustion prejudiced National Union by depriving it of the opportunity to control the underlying lawsuit's defense and settlement. The Church's failure to obtain National Union's consent to settle also bars recovery because it is a breach of the voluntary payments condition.

National Union is entitled to a ruling declaring that, due to the non-exhaustion of the Retained Limit, the Church has no right to defense or indemnity under the National Union Policy. Alternatively, the Church is estopped seeking defense and indemnity, and its breach of the voluntary payments provision is a bar to indemnity.

2

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The National Union Umbrella Policy

1.    National Union issued to the Church Umbrella Prime Commercial Liability Policy with Crisis Response® No. BE 4485442, effective June 15, 2006 to June 15, 2007 ("National Union Umbrella Policy"). (Joint Ex. 1, National Union Umbrella Policy, NU000075 – NU0000155)

2.    The National Union Umbrella Policy has limits of $▮▮▮▮▮ Each Occurrence, and a ▮▮▮▮▮ General Aggregate Limit.  (*Id*., Declarations Page, NU000075.)

3.    The National Union Umbrella Policy's Endorsement No. 17, the Retained Limit Amendatory Endorsement ("Retained Limit Endorsement") contains a Schedule of Retained Limits.  For General Liability, the scheduled Retained Limit is ▮▮▮▮▮ Each Occurrence, with no aggregate Retained Limit.  (*Id*. at NU000147 – NU000152.)

4.    The National Union Umbrella Policy's Insuring Agreement states:

> A. We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.
>
> The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

(*Id*. at NU000077.)

5.    The Insuring Agreement further states:

> B.  This policy applies, only if:
>
> 1.  the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period…

(*Id*.)

3

6.    The National Union Umbrella Policy's Limits of Insurance Section provides:

B.  The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy, except for:

a.  damages included within the Products-Completed Operations Hazard; and

b.  damages because of Bodily Injury or Property Damage to which this policy applies, caused by an Occurrence and resulting from the ownership, maintenance or use of an Auto.

*       *       *

D.  Subject to Paragraphs B and C above, the Each Occurrence Limit stated in Item 3A of the Declarations is the most we will pay for the sum of all damages arising out of any one Occurrence.

(*Id*. at p. NU000079 – NU000080.)

7.    As amended by the Retained Limit Endorsement, the Limits of Insurance Section contains the following provision regarding Defense Expenses:

H.  Defense Expenses will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if the amount of the applicable Retained Limit over which this policy applies immediately in excess is specifically designated in the Scheduled of Retained Limits as including Defense Expenses, then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such Defense Expenses will reduce the applicable Limits of Insurance of this Policy.

(*Id*. at NU000148.)

8.    As amended by the Retained Limit Endorsement, National Union Umbrella Policy's Limits of Insurance Section, also states:

M.  We will not make any payment under this policy unless and until the total applicable Retained Limit(s) and any applicable Other Insurance have been exhausted by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or final judgment, we will promptly pay on behalf of the Insured the

4

amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

(*Id.*)

9.      As amended by the Retained Limit Endorsement, the National Union Umbrella Policy's Defense Provisions Section, provides:

A.  We will have the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of Loss to which this policy applies.

(*Id.*)

10.     The National Union Umbrella Policy's Schedule of Retained Limits lists the Umbrella Policy's Retained Limits as follows:

| Coverages | Retained Limits |
|---|---|
| GENERAL LIABILITY | $███████ EACH OCCURRENCE |
| PRODUCTS/COMPLETED OPERATIONS | $███████ EACH OCCURRENCE |
| FOREIGN GENERAL LIABILITY | $███████ COMBINED SINGLE LIMIT |
| AUTO LIABILITY | $███████ COMBINED SINGLE LIMIT |
| FOREIGN AUTO LIABILITY | $███████ COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY Including Stop Gap EL | $███████ EACH ACCIDENT<br>$███████ DISEASE POLICY LIMIT<br>$███████ EACH OCCURRENCE |
| PROFESSIONAL LIABILITY | $███████ EACH OCCURRENCE |
| AIRCRAFT LIABILITY | $████████ EACH OCCURRENCE |
| FOREIGN EMPLOYERS LIABILITY | $███████ EACH ACCIDENT<br>$███████ DISEASE POLICY LIMIT<br>$███████ EACH OCCURRENCE |

5

EMPLOYEE BENEFITS LIABILITY            $            EACH CLAIM

(*Id*. at 000152.)

11.    As amended by the Retained Limit Endorsement, "Retained Limit" is defined as follows:

> Z.    Retained Limit means the applicable limit(s) listed in the Schedule of Retained Limits.  The Retained Limit(s) listed in the Schedule of Retained Limits will apply whether or not there is any available Scheduled Underlying Insurance or Other Insurance.  If there is Scheduled Underlying Insurance or Other Insurance applicable to a Loss, amounts received through such Scheduled Underlying Insurance or Other Insurance may be applied to reduce the Retained Limit.
>
> The above Retained Limit may be reduced or exhausted by:
>
> 1)  Any payment by or on behalf of the Insured of loss that would be insured by our policy within the Retained Limit, and/or
>
> 2)  Any payment by any insurer under any policies of insurance available to the Insured of Loss that would be insured by our policy within the above Retained Limits.  However, this provision does not apply to any policy of insurance specifically purchased to be excess of this policy.
>
> Furthermore:
>
> a.  If the Applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then amounts received through Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured for the payment of Defense Expenses shall reduce the Retained Limit.
>
> b.  If the applicable Retained Limit is not specifically designated in the Schedule of Retained Limits as including Defense Expenses, then amounts received through Scheduled Underlying Insurance of Other Insurance providing Coverage to the Insured shall not reduce the Retained Limit.

(*Id*. at NU000150 – NU000151.)

12.    As amended by the Retained Limit Endorsement, "Loss" is defined as follows:

6

P.  Loss means those sums actually paid as judgments or settlements, provided, however, that if the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then Loss shall include Defense Expenses.

(*Id*. at NU000150.)

13.    In the Schedule of Retained Limits, none of the Retained Limits is designated as including Defense Expenses.  (*Id*. at NU000152.)

14.    The National Union Umbrella Policy defines Bodily Injury as: "bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock, or humiliation resulting from any of these at any time."  (*Id*. at NU000105 – NU000106.)

15.    With respect to Bodily Injury and Property Damage, the National Union Umbrella Policy defines Occurrence as: "…an accident, including continuous or repeated exposure to the same general harmful conditions.  All such exposure to the same generally harmful conditions will be deemed to arise out of one Occurrence."  (*Id*. at NU000096.)

16.    The National Union Umbrella Policy contains the following Conditions:

G.    Duties in the Event of an Occurrence, Claim or Suit

*    *    *

4.  No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

(*Id*. at NU000090. )

17.    The National Union Umbrella Policy thus provides coverage for defense and indemnity upon exhaustion of a Retained Limit.  (*Id*. at NU000077, NU000147 – NU0000152.)

18.    The various Retained Limits applicable to different types of liability are listed a Schedule of Retained Limits; for General Liability, which applies to claims involving damages

7

because of Bodily Injury caused by an Occurrence, a Retained Limit of ██████████ applies to each Occurrence. (*Id*. at NU000147 – NU000152.)

### B.    The West Virginia Abuse Lawsuit

19.    In September 2013, the Church was named in a lawsuit, filed in the Circuit Court of Berkeley County, West Virginia (Civil Action No. 13-C-656), ████████████████



████████████████████████████████████████

██████████████████████████████████ (Ex. 2, Amended Complaint at CHC0010682 – 10684, CHC0010721-10729.)

20.    ████████████████████████████████

████████████████████████████████████████

██████ (Ex. 2 at CHC0010706.)

21.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████. (*Id*. at CHC0010721-10729)

22.    In a January 16, 2018 letter – approximately four years after ████ joined the action and less than a week before the start of trial – the Church, through its broker, Marsh, first reported the W.Va. Abuse Lawsuit to National Union under the National Union Umbrella Policy, noting: "This suit is in active litigation with trial beginning this week." (Ex. 3, January 16, 2018 tender letter.)

23.     National Union promptly responded by acknowledging receipt of the W.Va. Abuse Lawsuit, and requesting background information regarding the case and the impending trial.  (Ex. 4, January 29, 2018 acknowledgment letter.)

24.     By letter dated February 20, 2018, National Union advised the Church that it would investigate the W.Va. Abuse Lawsuit subject to a full and complete reservation of rights.  The letter noted: "we have no obligation to defend or indemnify at this time because we have no information that the Retained Limit has been exhausted…"  (Ex. 9, February 20, 2018 reservation of rights letter.)

25.     After receiving National Union's February 20, 2018 reservation of rights letter, the Church provided updates regarding the trial, but did not make any statement or provide information responding to National Union's position regarding the Retained Limit's non-exhaustion. (*See* Exs. 10-16)

26.     In a March 6, 2018 email to the Church's insurers, Paul Rytting, the Church's Director of Risk Management, reported that the Church had negotiated a "tentative settlement" with ▮▮▮▮▮▮▮▮▮▮ which included ▮▮▮▮▮▮▮▮▮▮ for ▮▮ ▮▮▮▮▮▮▮▮ the email advised that the claims of the remaining ▮ plaintiffs "should ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 10, March 6, 2018 email from the Church to National Union and other insurers.)

27.     On March 7, 2018, National Union issued a letter to the Church, acknowledging the reported tentative settlements, and reserving rights with respect to coverage for the settlements based on issues identified in its February 20, 2018 letter.  (Ex. 11, March 7, 2018 letter from National Union to the Church.)

9

28.     The March 7 letter advised that, because the Church had yet to provide information that the Retained Limit had been exhausted, National Union had no obligation to defend and indemnify at the time.  The letter also noted the National Union Umbrella Policy's voluntary payments provision, and advised the Church: "You did not seek our consent for these settlements, nor have we provided any consent.  National Union reserves all rights on this basis." (*Id*.)

29.     In emails sent to the Church following the March 7, 2018 letter, National Union further advised that it lacked sufficient information to consent to the settlements at that time, and requested additional information and materials in connection with its assessment.  (*Id*.)

30.     In a March 9, 2018 email to its insurers, the Church transmitted a table, identifying the agreed-upon settlement amounts for ███████ of the claimants involved in the previously reported tentative settlements, and identifying the most recent offers or demands for the remaining six plaintiffs. (Ex. 14, March 9, 2018 email from the Church to National Union and other insurers.)

31.     On March 13, the Church, responding to requests from its insurers, transmitted a report by the Church's trial counsel, titled "Plaintiffs' Theory and Allegations" ("Defense Report"), which, among other things, contained a timeline, setting out the dates on which ████████ ███████████████████████████████████ (Ex. 15, March 13, 2018 email from the Church to National Union and other insurers, with Defense Report attachment.)

32.     According to the timeline provided by the Church's defense counsel in the Defense Report, plaintiff ████ was allegedly abused by ████████████████████████ in April 2007. (*Id*., Defense Report at p. 2.)

33.     According to the Defense Report, ████████████████████████████ ██████████████████████████████ – after the National Union Umbrella Policy expired.  (*Id*.)

10

34.     In a March 21, 2018 email, National Union advised the Church that, based on the reported settlement amounts and the timeline provided by the Church's defense counsel, the National Union Umbrella Policy did not appear to be impacted; the letter explained: "The proposed settlement for ▇▇▇ is well within the National Union Umbrella Policy's Retained Limit, and therefore it does not appear to implicate coverage under the National Union Policy." (Ex. 17, March 21, 2018 letter from National Union to the Church at p. 1.)

35.     The March 21 email further noted that, because the National Union Umbrella Policy did not appear to be implicated, National Union would not rely on its lack of consent as a defense to coverage. (*Id.*)

36.     In closing, the March 21 email advised: "we will continue investigate this matter and respond in a timely manner, and I will continue to make myself available for any questions or concerns you may have." (*Id.*)

37.     On April 2, 2018, the Church advised the insurers that settlements had been reached with all ▇▇▇ the W.Va. Abuse Lawsuit plaintiffs, totaling ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 18, April 2, 2018 email from the Church to National Union and other insurers.)

38.     On August 17, 2018, National Union issued a letter to the Church advising of its intent to close its file for the W.Va. Abuse Lawsuit based on its determination that, regardless of any coverage issues that may exist, the W.Va. Abuse Lawsuit, did not present an exposure to the National Union Umbrella Policy. Citing the Church's April 2, 2018 email, and the timeline of abuse provided by defense counsel, the letter explained:

> [T]he only claimant who was allegedly abused within National Union's policy period ▇▇▇▇▇▇▇▇▇▇▇▇▇ That settlement amount is within the

11

▮▮▮▮▮▮▮▮ Retained Limit, and therefore, will not impact the National Union Policy.  As such, we will close our claim file.

(Ex. 19, August 17, 2018 letter from National Union to the Church. at p. 1.)

39.    The letter further stated that National Union continued to reserve all rights, and invited the Church to express any disagreement it may have with National Union's position. The letter also contained the following request: "Should you become aware of a change in the status of this matter which could impact on this assessment, please notify us with reference to this claims number." (*Id.*)

40.    Between August 17, 2018, when National Union issued its "no-impact" letter, and October 5, 2021, National Union received no further correspondence from the Church regarding the W.Va. Abuse Lawsuit.  (Ex. 22, Church's Responses to NU Interrogatories. at .p. 11.)

41.    In a letter dated October 5, 2021 ("Demand Letter") –  more than three years after Church settled ▮▮▮▮ claim and National Union sent its August 17 "no-impact" letter –  Steven B. Anderson of Kirton McConkie, writing as counsel for the Church, advised National Union that the Church had filed its complaint in this lawsuit.  To avoid litigation, the letter demanded ▮▮▮▮▮▮ reflecting the Church's settlement with ▮▮▮ and a separate ▮▮▮▮▮ settlement with their parents as well as payment of 100% of the Church's defense fees, which reportedly total ▮▮▮▮▮.  (Ex. 20, October 5, 2021 Demand Letter, at pp. 2, 5.)

42.    According to the Demand Letter, National Union "denied coverage" for the W.Va. Abuse Lawsuit, asserting that it had no duty to defend or indemnify because it had no information that the National Union Umbrella Policy's Retained Limit had exhausted. (*Id*. at p. 1-2.)

43.    The Demand Letter alleges that the National Union Umbrella Policy's Retained Limit may be satisfied by the Church's settlement with ▮▮▮ in the W.Va. Abuse Lawsuit, "and other claims alleging bodily injury during the policy period."  (*Id*. at p. 2.)

12

44.    The Demand Letter asserts that the Retained Limit had in fact been exhausted by the Church's payments of other claims before the Church tendered the W.Va. Abuse Lawsuit. (*Id.*)

45.    As part of its Initial Disclosures in this lawsuit, the Church produced a spreadsheet, listing claims for incidents occurring between June 15, 2006 and March 31, 2012, ███████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Ex. 25, May 21, 2022 letter from Kirton McConkie re Initial Disclosures.)

46.    In a May 20, 2022 letter accompanying a supplement to its Initial Disclosures, the Church's counsel, Haley Krug, described the spreadsheet as a "risk management report showing liability claims paid by the Church for bodily injury and/or property damage occurring in the policy years in question," (hereafter, "Risk Management Report") (*Id.*).

47.    With respect to the period June 15, 2006 to June 15, 2007, the Risk Management Report purports to reflect the following:



(Ex. 25 at CHC0012094-12126.)

48.    According to the Risk Management Report, the Church's payments for damages range from ███████████████████████████ ███████████████████████████████ █████████████████████████████████████████████████████████ █████████████████ (*Id.*)

49.    In all, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

50.    The Church contends ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

51.    During discovery, to minimize its document production burden, the Church advised National Union that it had designated ▮▮▮▮▮▮▮▮▮▮ claims as the particular claims it intends to rely on to exhaust the Retained Limit applicable to ▮▮▮ claim.[1]

52.    To date, the Church has produced to National Union, documents associated with ▮▮▮▮ claims listed on the Risk Management Report.  Counsel for the Church indicated that materials associated with three additional claims from the Risk Management Report would be produced, but to date, National Union has not received any such materials. (Klie Dec. at ¶ 26-31; Ex. 26-28, email correspondence between counsel.)

▮▮▮    According to the data contained in the Risk Management Report, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[1] As a discovery compromise, the Church agreed to produce limited claim file materials for ▮▮ claims listed in the Risk Management Report from its Initial Disclosures.  The materials produced are insufficient for National Union to determine whether any of these claims actually involved injury to which the National Union Policy would apply, without which the claims would not apply toward exhaustion of the Retained Limit even under the Church's exhaustion theory.  The Church has asserted that, in the event the Court finds that the National Union Umbrella Policy's Retained Limit can be exhausted as the Church contends, the parties should proceed to an additional stage of litigation, for the purpose of determining, among other things, whether, and to what extent, the "other" or "non-W.Va. Abuse" claims may *actually* be applied toward the Retained Limit's exhaustion. Based on the Church's representations, National Union reserves all of its rights, and does not concede that any of the ▮▮ claims for which documents have been produced to date involve liability for damages to which the Umbrella Policy applies.

14



54.     The Church acknowledges that the defense fees paid in connection with the claims listed in the Risk Management Report, do not apply toward the Retained Limit's exhaustion. (Ex. 20, Demand Letter at p. 3-4).

### III.   LEGAL STANDARD AND BURDEN

Summary judgment is appropriate when "there is no genuine dispute regarding the material facts and a party is entitled to judgment under the law applicable to such facts."  Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).  Insurance coverage disputes may be resolved on summary judgment because the construction of an insurance policy is a question of law.  *Hartford Acc. & Indem. Corp. v. U.S. Fid. & Guar. Co.*, 765 F. Supp. 677, 679 (D. Utah 1991).

### IV.   ARGUMENT

**A.   Exhaustion of the National Union Umbrella Policy's Retained Limit is a Condition Precedent to Coverage.**

Where insurance is excess of a retained limit, the insurer's obligations under the policy arise only after the retained limit is exhausted.  *See Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 714 F. Supp. 2d 1119, 1160 (D. Kan.) (coverage under umbrella policy is "triggered by exhaustion" of retained limit; excess insurer had no duty to pay until exhaustion of retained amount was established).  It is the "responsibility of the policyholder" to establish the retained limit's exhaustion as a "condition precedent to coverage." *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 420 (Ind. Ct. App. 2008) (excess insurer had no duty to defend or indemnify where insured could not demonstrate exhaustion of retained limit).  *See also McArthur v. State Farm Ins. Co.*, 274 P.3d 981, 989 (Utah 2012) (no coverage obligation where exhaustion of uninsured motorist insurance was condition precedent to coverage and settlement amount with uninsured driver was less than amount stated in auto policy's uninsured motorist provision).

Under the National Union Umbrella Policy's Retained Limit Endorsement, National Union's coverage obligations do not arise "unless and until the total applicable Retained Limit(s) and any applicable Other Insurance have been exhausted by the payment of Loss" to which the

16

Policy applies.  (Joint Ex. 1 at NU 000077, NU000147.)  As defined, "Loss" means "those sums actually paid as judgments or settlements…" (*Id.* at NU000150.)  The Retained Limit Endorsement further provides: "When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the insured the amount of such Loss falling within the terms of the Policy."  (*Id.* at NU000148.)  The National Union Umbrella Policy's Retained Limits are not eroded by defense costs.[2]  Thus, the Retained Limit may be exhausted only where the amounts paid toward a covered judgment or agreed settlement exceed the applicable Retained Limit.[3]  The Church may – but is not required to – maintain insurance for claims within the Retained Limit.  (*Id.* at NU000150 – NU000151.)

The term "Retained Limit" is defined by reference to the applicable limit(s) listed in the National Union Umbrella Policy's Schedule of Retained Limits, which sets out different retentions applicable to the various types of liability for which the National Union Umbrella Policy provides excess coverage.  (*Id.* at NU000152.)  The Schedule includes, for example, separate retention amounts for General Liability, Foreign Liability, Products/Completed Operations and Professional Liability, as well as combined single Retained Limits applicable to Auto Liability, and Foreign Auto Liability, respectively.  (*Id.*)  For General Liability, which is the applicable type of coverage

---

[2] Pursuant to the Retained Limit Endorsement, Defense Expenses, which include amounts paid by the insured (or another carrier) in the defense of the suit, do not reduce the Retained Limit unless the Schedule of Retained Limits specifically states that a Retained Limit may be eroded by Defense Expenses.  The Schedule of Retained Limits contains no such designation. Therefore, the Church may not rely on Defense Expenses to reduce or satisfy the National Union Umbrella Policy's Retained Limits. (*Id.* at NU000148, NU000151-152.)

[3] The Retained Limit Endorsement specifies that an "agreed settlement" means: "a settlement and release of liability signed by [National Union], the Insured and the claimant or the claimant's legal representative."

17

for the abuse claims in the W.Va. Abuse Lawsuit, a Retained Limit of ▉▉▉▉▉▉ applies for "each Occurrence." (*Id.*)

### 1.  ▉▉▉▉▉▉ Claim Involved a Single Occurrence, Subject to a ▉▉ ▉▉▉▉ Retained Limit, Which P.C.'s Settlement Did Not Exhaust.

When used in reference to an insurance policy's limits or retained limits, the phrase "each Occurrence" signals that the applicable policy limit and/or the number of retentions are to be determined based on the number of occurrences at issue in the claim or suit. *See generally* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, § 38 (2019). While there is no dispositive Utah authority, a majority of courts nationally look to the cause of the injury for purposes of determining the number of occurrences. *Id.* In jurisdictions applying this analysis, most courts hold that the abuse of each victim identified in a lawsuit constitutes a separate occurrence in each policy period in which the abuse occurred. *See, e.g., H.E. Butt Grocery Store v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 150 F.3d 526 (5th Cir. 1998) (Texas law) (collecting cases on "majority" approach; finding two occurrences where store faced liability for negligent supervision of employee accused of molesting two different children on different days) *Society of Roman Catholic Church of Lafayette v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1363 (5th Cir. 1994) (Louisiana law) (molestation of each child constituted separate occurrence; repeated molestations of same child were one occurrence); *State Farm Fire and Cas. Co. v. Elizabeth N.*, 12 Cal. Rptr. 2d 327 (Cal. Ct. App. 1992) (in case involving three children, repeatedly molested at a home daycare business, negligent supervision of each child was a separate occurrence); *S.F. v. West American Ins. Co.*, 250 Va. 461 (1995) (finding separate occurrence for each child molested by worker where insured was liable for negligent supervision of worker).[4] Thus, ▉▉▉▉▉ abuse of

---

[4] In a minority of jurisdictions, courts applying the cause test to determine the number of occurrences have held that abuse of multiple victims may constitute a single occurrence. *See, e.g.,*

18

each victim in the W.Va. Abuse Lawsuit constitutes a separate occurrence under each policy in effect when the victim was abused.  Under the National Union Umbrella Policy's terms, a separate Retained Limit of ███████ thus applies for each victim, in each policy period during which the abuse occurred.

It is undisputed that ██████████ was allegedly ██████████ during National Union's policy period.  (Ex. 2, W.Va. Abuse Lawsuit Complaint at p. 26-37; Ex. 15, Defense Report at NU003053.)  ████ was thus the only W.Va. Abuse plaintiff whose claim potentially involves liability for Bodily Injury taking place during the National Union Umbrella Policy's period.  The other children were allegedly abused only after the National Union Umbrella Policy expired; their claims, therefore, did not involve liability to which the National Union Umbrella Policy might apply.  Since only one victim – ████ – alleged abuse during National Union's policy period, a single Retained Limit of ████████ reflecting a single Occurrence, applies.[5]

To access coverage under the National Union Umbrella Policy, the Church is thus required to show that amounts paid as damages for covered Bodily Injury in settlement of ████ claim exceed the ████████ Retained Limit applicable to a single Occurrence.  In other words, if the Church's settlement with ████ involves payment of covered damages in an amount greater than ██████████ for example, a settlement with ████ for ████████ in covered damages – the National Union Umbrella Policy would be impacted, and the remaining ████████ portion of the settlement would be eligible for indemnity.  Yet, the Church's ██████████ settlement with P.C.

---

*Washoe Cty. v. Transcon. Ins. Co.*, 878 P.2d 306 (Nev. 1994) (abuse of multiple children at daycare center constituted a single occurrence; concluding that insured municipality's alleged act of negligently issuing license to daycare center was one occurrence).

[5] Because ████ was the only victim allegedly abused during National Union's policy period, her abuse would constitute a single occurrence under both the majority application of the cause test, reflected in cases such as *H.E. Butts*, and the minority approach, adopted in *Washoe Cty.*

19

does not exceed ████████  Thus, the single occurrence Retained Limit applicable to ████ claim is not satisfied, and National Union's duty to indemnify does not arise.

### 2. National Union's Duty to Defend Does Not Arise Because the National Union Umbrella Policy's Retained Limit is Not Exhausted.

The Church erroneously contends that National Union owes a duty to defend the W.Va. Abuse Lawsuit, and that the Church is entitled to reimbursement of 100% of the legal expenses it incurred.

Under the National Union Umbrella Policy's Defense Provision, National Union's duty to defend arises only when the applicable Retained Limit has been exhausted by payment of Loss to which the National Union Umbrella Policy applies.  As with the duty to indemnify, it is incumbent upon the insured to establish exhaustion of an umbrella policy's retained limit as a condition precedent to securing the right to a defense. *See, e.g., Berry Plastics Corp. v. Illinois Nat'l Ins. Co.*, 244 F. Supp. 3d 839 (2017) (where insured did not establish exhaustion of umbrella policy's retention, it had no right to defense, and therefore, no claim for breach of duty to defend).  *See also Landmark Am Ins. Co, v. M.J. Edwards & Sons Funeral Home*, No. 15-cv-02678, 2018 WL 6588565 (W. Tenn. Jan. 24, 2018) (where "each occurrence" retained limit applied to each decedent under mortuary insurance, there was no duty to defend unless retained limit for each decedent was satisfied; observing "no breach of contract for failure to defend could occur because no duty to defend on the part of [the insurer] would arise.")

Because exhaustion of the Retained Limit is the trigger for National Union's duty to defend, and ████ settlement does not exhaust the Retained Limit, National Union's duty to defend does not arise.  Therefore, National Union has no duty to pay any of the Church's defense costs.[6]

---

[6] Notably, even if the amount of Church's settlement with P.C. had exceeded the Retained Limit, so as to trigger a duty to defend, National Union's defense obligation (and corresponding duty to

20

### 3. The Retained Limit Applicable to ▉▉▉ Claim Cannot Be Satisfied by Aggregating Amounts Paid for Other, Unrelated Liabilities Caused by Different Occurrences.

Conceding, as it must, that its settlement with ▉▉ did not exhaust the National Union Umbrella Policy's Retained Limit, the Church asserts that the Retained Limit may instead be satisfied by aggregating amounts the Church paid as damages for ▉▉▉▉▉ other claims, involving claimants and injuries that are unrelated to the W.Va. Abuse Lawsuit – so long as those claims also involved Property Damage or Bodily Injury taking place during the period when the National Union Umbrella Policy was in effect.[7] (Ex. 20, Demand Letter at p. 2-4; Ex. 22, Church's Responses to NU Interrogatories at p. 5; Ex.25, Risk Management Report at CHC000012094 – 12126.)

As set out in its Demand Letter, the Church bases its position regarding the Retained Limit's exhaustion on a phrase in the Retained Limit definition, which states that the Retained Limit may be reduced or exhausted by: "[a]ny payment by or on behalf of the Insured of loss that would be insured by our policy within the Retained Limit…" (Ex. 20, at p. 3; Joint Ex. 1 at NU000150-NU000151.)  Reading the words "any payment…of loss," in isolation, the Church contends that any losses paid by the Church for any liabilities may be combined to satisfy the

---

pay Defense Expenses) would arise only as of the date of the Church established the Retained Limit's exhaustion.  Under no circumstances would the Church be entitled to recover its pre-exhaustion defense costs.  Likewise, under the National Union Umbrella Policy's Conditions Section, National Union has no duty to pay any pre-tender defense costs. (Joint Ex. 1 at NU00090.)  Accordingly, the Church's claim for 100% of its defense costs is flawed on this additional basis.

[7] The Church's position, which appears to have evolved over the course of discovery in this action, is a departure from the position initially articulated in the Church's Demand Letter, which indicated that only claims for Bodily Injury would be applied toward the Retained Limit applicable to P.C.'s claim.  Additionally, some of the claims upon which the Church relies to support its exhaustion argument are characterized in the Risk Management Report as involving damages for ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*See, e.g.*, Claim No. RC00955 for ▉▉▉▉▉; Ex. 25, Risk Management Report at CHC0012109.)

Retained Limit applicable to a given claim, so long as the other claim payments involved damages for a type of injury to which the National Union Umbrella Policy may apply.  (Ex. 20 at p. 3-4.) Based on this construction, the Church has produced, for the first time in this lawsuit, a laundry list of ▮▮▮ other claims, involving incidents taking place between June 15, 2006 and June 15, 2007, reportedly resulting in some form of injury to which the National Union Umbrella Policy might apply if the claim involved covered damages in excess of the Retained Limit applicable to the claim.  (Ex. 22, Church's Responses to National Union's First Interogatories. at p. 5; Ex. 25, Risk Management Report at CHC000012094 – 12126.)  Together, the damages reportedly paid with respect to these ▮▮▮ other claims falling within National Union's policy period total ▮▮▮▮▮▮ (Undisputed Facts ¶ 49; Ex. 25, Risk Management Report at CHC0012094-12126.)

The Church's exhaustion argument is predicated on a misreading of the Retained Limit definition, and fails to give effect to the full text of the provision, which states:

> Z.  Retained Limit means the applicable limit(s) listed in the Schedule of Retained Limits.  The Retained Limit(s) listed in the Schedule of Retained Limits will apply whether or not there is any available Scheduled Underlying Insurance or Other Insurance.  If there is Scheduled Underlying Insurance or Other Insurance applicable to a Loss, amounts received through such Scheduled Underlying Insurance or Other Insurance may be applied to reduce the Retained Limit.
>
> The above Retained Limit may be reduced or exhausted by:
>
> 3)  Any payment by or on behalf of the Insured of loss that would be insured by our policy within the Retained Limit, and/or
>
> 4)  Any payment by any insurer under any policies of insurance available to the Insured of Loss that would be insured by our policy within the above Retained Limits.  However, this provision does not apply to any policy of insurance specifically purchased to be excess of this policy.

(Joint Ex. 1 at NU000150-151.)

22

When the definition is read as a whole, it is clear that the Retained Limit is defined as the retention amount applicable to the particular *type* of claim at issue, as set out in the Schedule of Retained Limits - here, ▓▓▓▓▓▓ "each Occurrence" for General Liability.  The definition specifically states, in its beginning sentence: "Retained Limit means the ***applicable*** limit(s) listed in the Schedule of Retained Limits." (emphasis added)  The numbered subparagraphs containing the "any payment" language relied on by the Church are specifically limited in their application to "[t]he above Retained Limit," which, as noted, is specifically defined in the preceding paragraph as the amount set out in the Schedule of Retained Limits.  The language relied on by the Church addresses the scenario contemplated in the preceding sentence of the definition, which addresses satisfaction of the Retained Limit where there is Scheduled Underlying Insurance or Other Insurance "applicable to a Loss."  The two subparagraphs confirm that, in such instances it is the "applicable" Retained Limit which may be reduced or exhausted both by payments made by the Church, and by payments the Church receives from Other Insurance applicable to that Loss.[8]

When construing an insurance policy, the individual terms should be "harmonized with the policy as a whole, and all provisions should be given effect if possible."  *See generally American National Property & Casualty Co. v. Sorensen*, 2013 UT App 295, 11.  Here, the Church's skewered reading of words parsed from a portion of the Retained Limit definition cannot be harmonized with the remainder of the definition, and is indeed incompatible with the National Union Umbrella Policy as a whole.  In this regard, the Church's construction ignores the Retained Limit definition's first paragraph, including the introductory phrase preceding the Church's

---

[8] The Church does not contend that any underlying insurance or other insurance was available for P.C.'s claim, and does not seek to have any such payments applied to reduce the Retained Limit. (Ex. 22 at p. 6.)

cherry-picked language, which plainly states that it applies to "'[t]he above Retained Limit," discussed in the definition's first paragraph. Moreover, the very use of the words "*a Loss*" in the Retained Limit definition makes clear that the Retained Limit applies to *a particular Loss*, and is eroded or exhausted by payments made by the insured or other carriers, with respect to that same Loss. (Joint Ex. 1 at NU000150-151.)

Nor can the Church's argument be reconciled with the Schedule of Retained Limits, which, as noted above, sets out different Retained Limits for different types of liability. The Church's contention – that it may rely on its payments of different claims, constituting separate Occurrences, and involving different types of liabilities (which are each subject to separate Retained Limits), to exhaust a single Retained Limit applicable to another claim involving an entirely different Occurrence, completely fails to give effect to the various different Retained Limits set out in the Schedule. In this regard, the Auto Liability claims the Church seeks to aggregate to exhaust the General Liability Retained Limit applicable to ███████ abuse claim are themselves subject to their own Retained Limits. For domestic Auto Liability, for example, the Schedule lists a Retained Limit of ██████████ "Combined Single Limit." (*Id*. at NU000152.) Significantly, the phrase "Combined Single Limit" means that, unlike bodily injury claims, the Church's Auto Liability claims may be aggregated to exhaust a single Retained Limit of ██████████[9] Conversely, the phrase "each Occurrence" has no such meaning, and there is nothing in the National Union Umbrella Policy to support the conclusion that amounts paid with respect to Auto Liability claims

---

[9] *See,* https://www.irmi.com/term/insurance-definitions/combined-single-limits (last visited May 5, 2023).

may be used to exhaust the Retained Limit applicable to a claim involving liability for Bodily Injury resulting from sexual abuse or molestation.[10]

Fundamentally, the Church's position is at odds with the basic purpose of excess insurance, which is to provide the "the next 'layer' or 'level' of coverage" for a loss in excess of a certain threshold.  *See* Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issus,* 24 Torts & Ins. L.J. 715, 715 (1989).  *See also Globe Indem. Co. v. Jordan,* 634 A.2d 1279, 1283 (Me. 1993) ("[t]he purpose of an umbrella policy is to protect the insured in the event of a catastrophic circumstances, when the insurer's liability would exceed the limits of the underlying policy."); *Trinity Universal Ins. Co. v. Metzger*, 360 So. 2d 960, 962 (Ala. 1978) ("an umbrella policy is "excess insurance designed to protect against catastrophic loss.") Here, the threshold for General Liability claims is ▮▮▮▮▮▮ "each Occurrence," which sets the attachment point for covered damages resulting from a single "Occurrence" at ▮▮▮▮▮▮

The National Union Umbrella Policy simply cannot be construed to provide for the exhaustion of the "each Occurrence" ▮▮▮▮▮▮ General Liability Retained Limit applicable to ▮▮▮▮ claim by aggregating payments of unrelated claims involving various types of liability, caused by different occurrences, which are, themselves, subject to different Retained Limits.  The Church's claim for defense and indemnity under the National Union Umbrella Policy fails on this basis.

---

[10] The phrase "each Occurrence" also has no meaning under the Church's argument because the claims it contends it may aggregate to satisfy the "each Occurrence" Retained Limit (whether they are Auto, Professional or General Liabilities) are all clearly caused by different events and incidents, all of which are different Occurrences.

**B.      The Church's Failure to Assert Exhaustion of the Retained Limit During the W.Va. Abuse Litigation is Grounds for Estoppel.**

Under Utah law, the elements of equitable estoppel are: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement." *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979). Equitable estoppel "reflects circumstances where it is not fair for a party to represent facts to be one way to get the other to agree, and then change positions later to the other's detriment." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 15.

Assuming *arguendo* that the National Union Umbrella Policy's Retained Limit may be exhausted as the Church contends, (which it cannot) its failure to timely inform National Union of the Retained Limit's exhaustion by the Church's payment of other, unrelated claims is grounds for estoppel. The Church acknowledges that none of the claims upon which it relies to support its exhaustion position were reported to National Union at any time prior to the instant lawsuit. Thus, National Union could not possibly have surmised actual or potential exhaustion of the Retained Limit(s), or anticipate if or when the Church might elect to "exhaust" the Retained Limit applicable to P.C.'s claim by aggregating its other claim payments. The Church's claims for defense and indemnity are predicated on the notion that the Retained Limit was exhausted at the time the Church tendered the W.Va. Abuse Lawsuit to National Union. In this regard, the Church's Demand Letter asserts: "The Policy permits the Church to satisfy the 'retained limit' by the settlement of both this and other claims alleging bodily injury during the policy period – *and the Church had long done so by the time it tendered defense and indemnity of the [redacted] Lawsuit to National Union*." (emphasis added) Yet, despite National Union's repeated requests for

26

information relevant to its investigation and coverage analysis, the Church never conveyed a belief regarding the Retained Limit's exhaustion.

National Union's effort to secure information regarding the Retained Limit's exhaustion, and its own position regarding non-exhaustion were set out on multiple occasions in the period between the Church's tender and settlement of the W.Va. Abuse Lawsuit, including the following:

- After receiving notice of the W.Va. Abuse Lawsuit in January 2018, National Union requested that the Church provide information necessary to its coverage investigation.  (Ex. 5, Jan. 25, 2018 email at NU000241.)

- National Union's February 20, 2018 reservation of rights specifically noted National Union's belief that it had no current duty to defend or indemnify the Church in connection with the W.Va. Abuse Lawsuit "because we have no information that the Retained Limit has been exhausted."  (Ex. 9, Feb. 20, 2018 reservation of rights letter at NU002605-2608.)

- After receiving information regarding the Church's tentative settlement with P.C., National Union advised the Church: "The proposed settlement for that Plaintiff is well within the National Union Policy's Retained Limit, and therefore, it does not appear to implicate coverage under the National Union Policy."  (Ex. 17, March 21, 2018 email exchange at NU003065.)

- After receiving the Defense Report and tentative settlement amounts, National Union further advised the Church that, because the National Union Policy's Retained Limit did not appear to be exhausted, National Union would not rely on its lack of consent as a defense to coverage. (*Id*.)

- In its August 17, 2018, letter, advising the Church of its intent to close its file due to its conclusion that the National Union Umbrella Policy was not impacted by the Church's settlement with P.C., National Union requested: "If you disagree with our initial assessment….please let us know."  The letter further requested: "Should you become aware of a change in the status of this matter which would impact our assessment, please notify us…." (Ex. 19, Aug. 17, 2018 no impact letter at NU003126.)

It is undisputed that the Church never so much as suggested that it might elect to "exhaust" the Retained Limit by aggregating amounts paid for other claims at any time prior to sending the Demand Letter in October 2021. (Ex. 22, Church's Responses to NU Interrogatories. at p. 5, 7.)

27

In the unlikely event the Church is able to prove the National Union Umbrella Policy's Retained Limit was exhausted by the time the Church tendered the Lawsuit as it now contends, its failure to inform National Union of the exhaustion, and provide National Union, whose right and duty to defend would have been triggered, the opportunity to assume the Church's defense, deprived National Union of its right to control the defense and settlement of the W.Va. Abuse Lawsuit and the ability to independently evaluate the settlements' reasonableness.

Based on the Church's silence in the face of repeated communications from National Union regarding the non-exhaustion of the Retained Limit, and the detrimental impact on National Union, the Church should be estopped from now claiming a right to coverage under the National Union Umbrella Policy.

### C.  The Church Breached the National Union Umbrella Policy's Consent to Settle Condition, and Indemnity is Barred on this Additional Basis.

The National Union Umbrella Policy's Conditions Section contains a consent to settle provision, which provides: "No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent."  (Ex. 1 at p. 14 of 23.)  Such provisions are enforceable as a matter of law as a bar to coverage unless the insurer has disclaimed coverage or failed to exercise diligence, good faith, and conscientious fidelity in safeguarding the insured's interests.  S*ee Utah Transit Authority v. Liberty Mutual Ins. Co.*, No. 04-CV-01072, 2006 WL 2992715 (D. Utah Oct. 18, 2006) (citing *Franklin v. Oklahoma City Abstract & Title Co*., 584 F.2d 694 (10th Cir. 1978).

Here, upon receiving notice of the W.Va. Abuse Lawsuit, National Union acknowledged its receipt, and undertook an investigation subject to a reservation of rights.  National Union's February 20, 2018 position letter advised that, due to the lack of information establishing exhaustion of the Retained Limit, the National Union Umbrella Policy did not appear to be

28

impacted; the letter further advised that National Union fully reserved all rights with respect to coverage for the W.Va. Abuse Lawsuit. (Statement of Undisputed Facts at ¶ 24; Ex. 9, reservation of rights letter.) Contrary to the Church's contentions, the letter was not a disclaimer of coverage, it was a reservation of rights, as explicitly noted in the letter. (*Id*.) Accordingly, the Church was obligated to comply with the National Union Umbrella Policy's Conditions, including the consent to settle provision. Nevertheless, on March 6, 2018, the Church reported a "tentative settlement" with thirteen of the nineteen W.Va. Abuse plaintiffs, which it negotiated and secured without National Union's knowledge, participation, or consent. In subsequent correspondence, the Church confirmed that it had resolved the remaining claims, and finalized its settlements with the first thirteen plaintiffs, which included ▮▮ and her parents. If the National Union Umbrella Policy had already been triggered at the time of its tender as the Church now contends, or even if the Church believed the Retained Limit would be exhausted in the manner it now claims, the Church's failure to secure National Union's consent to settle with ▮▮ constituted a breach of the consent to settle provision. To its detriment, National Union was deprived of the opportunity to control the settlement negotiations, independently assess the settlement's reasonableness, and reject it in favor of pursuing the ongoing trial – all of which are within National Union's rights once the National Union Umbrella Policy is impacted. To the extent coverage under the National Union Umbrella Policy is otherwise implicated due to the Retained Limit's exhaustion, the Church's breach of the consent to settle provision is an additional bar to its claim for indemnity.

## V.    CONCLUSION

Based on the facts developed in the W.Va. Abuse Lawsuit, only one victim, P.C., alleged abuse during National Union's policy period. Under the National Union Umbrella Policy, coverage for ▮▮ claim is subject to a Retained Limit of ▮▮▮▮ reflecting a single

29

Occurrence – the abuse of ▮ during National Union's policy period.  The Church settled with ▮ for ▮ – an amount well within the Retained Limit.  Therefore, National Union's duties to defend and indemnity were never triggered.  The Church's contention that the ▮ each Occurrence Retained Limit applicable to ▮ General Liability claim may be satisfied by payments it made toward as many as ▮ other claims, completely unrelated to and independent of ▮ claim and the W.Va. Abuse Lawsuit is specious, and belied by the plain language of the Retained Limit Endorsement and Schedule of Retained Limits. Further, if the Retained Limit was exhausted at the time of its tender, as the Church has argued, its failure to advise National Union of the exhaustion and continued control of the defense and settlement, prejudiced National Union by depriving it of its rights under the National Union Umbrella Policy.  As such, the Church should be estopped from pursuing its claims in this action.  Finally, the Church's failure to obtain National Union's consent to settle also bars recovery as a breach of the voluntary payments condition.

**WHEREFORE**, National Union respectfully requests that the Court enter an order:

1. Granting National Union's motion for summary judgment;

2. Declaring that the Church has failed to establish exhaustion of the National Union Umbrella Policy's Retained Limit, which is a condition precedent to coverage;

3. Declaring that National Union owes no duty to defend or indemnify the Church;

4. Entering judgment in favor of National Union on the Church's Complaint; and

5. Granting National Union such other and further relief as the Court deems just.

DATED this 19th day of May 2023.        By:  s/Amy P. Klie

Richard H. Nicolaides, Jr. (*Pro Hac Vice*)
Amy P. Klie (*Pro Hac Vice*)
Samuel Y. Chen (*Pro Hac Vice*)
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S WACKER DR STE 2100
CHICAGO, IL 60606
(312)585-1400
rnicolaides@nicolaidesllp.com
aklie@nicolaidesllp.com
schen@nicolaidesllp.co


Rebecca L. Hill
Phillip S. Ferguson
CHRISTENSEN & JENSEN PC
257 E 200 S STE 1100
SALT LAKE CITY, UT 84111
(801)323-5000
rebecca.hill@chrisjen.com
phillip.ferguson@chrisjen.com

*Attorneys for Defendant National Union
Fire Insurance Company of Pittsburgh, Pa.*

31

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2023, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

Randy T. Austin
KIRTON McCONKIE
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
raustin@kmclaw.com

Michael Johnston
KIRTON McCONKIE
2600 West Executive Parkway, Suite 400
Lehi, Utah 84043
mjohnston@kmclaw.com

Justin W. Starr
KIRTON McCONKIE
3100 North 200 East, Suite 3A
St. George, Utah 84770
jstarr@kmclaw.com

Haley K. Krug (*admitted pro hac)*
Steven B. Anderson (*admitted pro hac*)
KIRTON McCONKIE
1100 West Idaho Street, Suite 930
Boise, ID 83702
hkrug@kmclaw.com
sandersen@kmc.com

Christopher A. Wadley
Ryan J. Rodman
WALKER WILCOX MATOUSEK LLP
One North Franklin, Suite 32,
Chicago, Illinois  60606
cwadley@walkerwilcox.com
rrodman@walkerwilcox.com

s/Amy P. Klie

Amy P. Klie
*Attorneys for Defendant National Union*
*Fire Insurance Company of Pittsburgh, Pa.*

32